UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.   1:20-cr-10041-PBS |
| | ) | |
| | ) | |
| BRUCE BROWN | ) | |

### DEFENDANT'S EMERGENCY MOTION TO RECONSIDER PRETRIAL RELEASE ON CONDITIONS BASED ON CHANGED CIRCUMSTANCES THAT THE DEFENDANT HAS NOW TESTED POSITIVE FOR COVID-19[1]

The defendant, Bruce Brown ("Brown"), by and through undersigned counsel, respectfully moves this Honorable Court, on an emergency basis, to reconsider its prior order to detain Brown pending trial and to release him on conditions pending trial in this matter. As grounds therefor, Brown is one (1) of approximately seventy-two (72) pre-trial detainees held at the Donald W. Wyatt Detention Facility who tested positive for COVID-19 which constitutes a serious, life-threatening change in circumstances that can only be ameliorated by his release. The government objects.

### BACKGROUND

In February, 2020, an indictment was returned which charged Brown with one (1) count of conspiracy to commit sex trafficking in violation of 18 USC § 1594(c), four (4) counts of sex trafficking by force, fraud and coercion in violation of 18 USC § 1591(a)(1) and (b)(1), and one (1) count of sex trafficking of a minor by force, fraud and coercion in violation of 18 USC § 1591(a)(1) and (b)(1) and (2). ECF#1. Brown agreed to a voluntary order of detention, *see* ECF#9, at the time of his initial appearance on February 19, 2020. Since that time, he has been detained in

---
[1] See medical records, submitted Under Seal.

the Donald W. Wyatt Detention Facility ("Wyatt") in Central Falls, Rhode Island. He was subsequently charged via complaint with new offenses, specifically obstruction of justice in violation of 18 USC § 1503 and witness tampering in violation of 18 USC § 1512, on March 6, 2020. A superseding indictment was thereafter returned in June to include these offenses with those which were alleged in the first indictment.

On July 30, 2020, Brown moved the Court for his release on conditions. He argued that his detention presented a heightened risk that he would be exposed to the emergent coronavirus disease 2019 ("COVID-19") pandemic. He further argued a combination of his age (forty-one (41)) and pre-existing medical conditions (chronic hypertension, asthma, prediabetes) made him vulnerable to extreme illness and possible death should that risk come to pass.

The Court promptly held a detention hearing on August 6, 2020 at which the government proceeded by proffer and offered exhibits which included: recorded telephone calls that allegedly form the basis for the obstruction of justice and witness tampering charges; incident reports relevant to Brown's prior criminal record; and Brown's medical records obtained from Wyatt. On August 31, 2020, the Court issued a written order that Brown be detained pending trial. The Court determined, *inter alia*, the medical conditions which Brown argued placed him in an at-risk category were "well managed and under good control" were not sufficient[2] to rebut the presumption[3] that no condition or combination of conditions will reasonably assure the safety of

---

[2] The Court also observed that although Brown had told personnel at Wyatt he required in the past a rescue inhaler for asthma but that there were no clinical indications one is necessary at present.

[3] A rebuttable presumption in favor of detention applies where, as here, a defendant has been charged with a violation of an offense under 18 USC § 1581, *et seq.*, for which a maximum term of imprisonment of 20 years or more is prescribed and/or where a defendant has been charged with an offense involving a minor child in violation of, e.g., 18 USC § 1591. *See* 18 USC § 3142(e)(3).

the community . ECF#71 at 2. The Court also concluded that the combination of the penalties Brown faces, his criminal history, the recorded jail calls underlying the obstruction and witness tampering charges, as well as an absence of employment history was sufficient to satisfy the government's burden by a preponderance of the evidence that no condition or combination of conditions will assure the his appearance as required and not been rebutted.

## LEGAL ARGUMENT

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). *See also United States v. Angiulo*, 755 F.2d 969, 972-73 (1st Cir. 1985) (holding that the magistrate who issues a detention order has inherent authority to reconsider that order). Compelling reasons may exist where release is necessary for the preparation of Brown's defense, see 18 U.S.C. § 3142(i), or where his serious medical conditions warrant release, *see, e.g., United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is denied bail "retains the ability to request[,] . . . in extraordinary circumstances, . . . temporary release under § 3142(i)" should future developments with respect to his medical conditions so warrant).

The circumstances that existed when Brown was ordered detained have now changed dramatically. At that time, he had been detained at the facility for a number of months and his exposure to COVID-19 remained only speculative. Having contracted the virus, however, has turned uncertain risk into palpable danger. The results of a meta-analysis conducted by the National Commission on COVID-19 and Criminal Justice of various mortality and case rate

3

tracking efforts within the U.S. prison system brings this danger into sharp focus. *See* Schnepel, Kevin T. COVID-19 in U.S. State and Federal Prisons. Washington, D.C.: Council on Criminal Justice, September 2020 (hereinafter "CCJ").[4] Drawing from data collected and analyzed by the Centers for Disease Control ("CDC"), The Marshall Project, and Johns Hopkins University's Department of Health Policy and Management, the CCJ found: "[f]or the U.S. as a whole, the prison mortality rate is 30% higher than the national mortality rate. However, adjusting for sex, age and race/ethnicity of the U.S. prison population, the prison COVID-19 mortality rate is 110% higher than the national mortality rate." *Id.* at 8.

The reason for this vast divide, according to the CCJ, is because "[i]ncarcerated individuals are... more likely to suffer from chronic health conditions, *such as heart disease or diabetes*, which can exacerbate the impact of COVID-19 on this population," as well as "other challenges" such as "limited medical resources." *Id.* at 5, *citing* Maruschak, L.M., *et al*: 2015, Medical problems of state and federal prisoners and jail inmates, 2011-12, US Department of Justice, Office of Justice Programs, Bureau of Justice Statistics *and* Wallace M., *et al*: 2020, COVID-19 in Correctional and Detention Facilities—United States, February–April 2020, MMWR Morbidity and Mortality Weekly Report 69, 587–590.

Moreover, according to the CDC,[5] Brown's age (41), ethnicity (African American) places

---

[4] Available at
https://cdn.ymaws.com/counciloncj.org/resource/resmgr/covid_commission/FINAL_Schnepel_Design.pdf

[5] The charts reproduced below are available at:

https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html

him in a category of persons with elevated hospitalization and mortality rates:

| Rate ratios compared to White, Non-Hispanic Persons | American Indian or Alaska Native, Non-Hispanic persons | Asian, Non-Hispanic persons | Black or African American, Non-Hispanic persons | Hispanic or Latino persons |
|---|---|---|---|---|
| Cases[1] | 2.8x higher | 1.1x higher | 2.6x higher | 2.8x higher |
| Hospitalization[2] | 5.3x higher | 1.3x higher | 4.7x higher | 4.6x higher |
| Death[3] | 1.4x higher | No Increase | 2.1x higher | 1.1x higher |

Rate ratios compared to 18-29 year olds

| | Hospitalization[1] | Death[2] |
|---|---|---|
| 0-4 years | 4x lower | 9x lower |
| 5-17 years | 9x lower | 16x lower |
| 18-29 years | Comparison Group | Comparison Group |
| 30-39 years | 2x higher | 4x higher |
| 40-49 years | 3x higher | 10x higher |
| 50-64 years | 4x higher | 30x higher |
| 65-74 years | 5x higher | 90x higher |
| 75-84 years | 8x higher | 220x higher |
| 85+ years | 13x higher | 630x higher |

The CDC has likewise found there is the "[s]trongest and most consistent evidence" that persons who are obese are among those with an increased risk to become severely ill as a result of the COVID-19 virus.[6] *See* Centers for Disease Control and Prevention, *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19* (available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-

---

https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html

[6] Similarly, the CDC has found there is mixed evidence that persons with asthma and hypertension are more likely to become severely ill from having contracted the virus.

5

table.html).

Undersigned counsel respectfully submits the limitations which have put others at mortal risk are no less at work in these circumstances. Brown reports that he is currently segregated along with numerous other detainees who have tested positive for COVID-19, generally, and specifically, is in a cell with three (3) other detainees who are positive and/or symptomatic for COVID-19 without the ability to social distance and a shared lavatory. These individuals are on 24/7 isolated lockdown. The elevated mortality rates for those exposed to COVID-19 in the prison setting cannot be understated particularly when weighed against the various other factors (e.g., Brown's age, weight, history of hypertension, ethnicity) which already place him in a category of individuals with an elevated-risk for severe illness or worse.

As Brown argued in his first motion for release: courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). Thus, even in cases where there is a presumption of dangerousness, release may be appropriate to safeguard a defendant's health and life. *See, e.g*, *Id*. *See also United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 146 (D.P.R. 2002) (defendant charged with assaulting and attempting to kill federal agent released to custody of his relatives because "[n]otwithstanding Brown's apparent dangerousness in this case, his present condition is indeed grave and can deteriorate if not carefully treated.

Moreover, even if he were to recover, there is no definitive evidence that he could not become reinfected. At present, the Bureau of Prisons cannot provide the necessary medical care defendant requires."); *United States v. Johnston*, 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of prompt treatment due to colon cancer released to custody of his wife for 21 days, despite institution's averment that it could provide medical care); *United States v. Adams*, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions).

The Bail Reform Act requires the Court to impose "the least restrictive [] condition, or combination of conditions, that [it] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The defense submits that there are conditions of release that can be crafted in this case, specifically 24/7 home detention with electronic monitoring, no access to electronic devices, no visitors except as medically necessary and/or for his subsistence, and agreement to random searches of the premises by US Probation, all of which will mitigate any risk of flight or danger Brown may pose, while allowing him to remain isolated in a home-setting. Brown can reside with his uncle, Robert McDougald at his home address22 in Boston, a multiunit building which his uncle owns and also resides in. Upon the imposition of the suggested conditions, Brown poses no danger to the community – he will be entirely isolated - while on home-detention with electronic monitoring. Likewise, an electronic monitor with the requirement of home detention will mitigate any risk of flight. To that end, the defense respectfully requests that this Court grant conditions of release or,

in the alternative, reopen the bond hearing and allow the defense to present arguments in favor of bail to the Court.

## CONCLUSION

Wherefore Brown moves this Court to grant the following relief:

    A.    Hold an emergency hearing on this motion as soon as possible; and

    B.    Allow Brown to appear by video; and

    C.    Grant this motion and release Brown on conditions set forth above as well as any additional conditions that the Court deems necessary; and,

    D.    Grant such further relief as is just.

Dated: November 12, 2020              Respectfully submitted,

    /s/ *Daniel C. Reilly*
Daniel C. Reilly, BBO#
BRAD BAILEY LAW, P.C.
44 School Street, Suite 1000B
Boston, Massachusetts 02108
Tel.: (857) 991-1945
Fax: (857) 265-3184
dan@bradbaileylaw.com

## Certificate of Service

I, Daniel C. Reilly, hereby certify that on this the 12th day of November, 2020, I caused a true copy of the foregoing motion to be served upon all necessary parties by electronic mail.

    /s/ *Daniel C. Reilly*
Daniel C. Reilly