IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>BROWN BRUCE, MURIEL CLOSE<br><br>Defendants. | Criminal No. 20-cr-10041-PBS |

## GOVERNMENT'S OPPOSITION TO DEFENDANT BRUCE BROWN'S RENEWED MOTION FOR RELEASE

The United States of America, by and through its counsel of record, the United States Attorney for the District of Massachusetts and Assistant United States Attorney Mackenzie A. Queenin, hereby opposes the defendant Bruce Brown's (hereinafter the "defendant" or "Brown") renewed motion which asks the Court to release him from Wyatt Detention Facility while infected with COVID-19. Brown is charged with various offenses based upon his sex trafficking of at least[1] five victims over a period of fifteen years.

The Court recently held that "the defendant faces numerous very serious crimes with substantial penalties. The evidence against him is strong and the presumption that he constitutes a danger to the community and a risk of nonappearance has not been rebutted **to any degree**. The defendant's lengthy criminal history, recorded jail calls, and minimal, if nonexistent employment history, lend credence to the belief that he cannot be relied upon to abide by conditions of release." Dkt. 71, at 3 (emphasis added). Releasing him into the community while infected with COVID-19, while none of these underlying concerns have been addressed, is antithetical to the Court's prior opinion. Release is particularly unwarranted here, where there is no evidence that the

---

[1] The government's investigation is ongoing.

defendant is experiencing anything other than ordinary symptoms, showing normal vital signs, and is receiving all necessary medical care. See Ex. 1, filed under seal.[2] The defendant's motion should be denied.

## Factual Background

On February 13, 2020, a grand jury returned a nine count Indictment against Brown. Brown made his first appearance before the Court on February 19, 2020, and agreed to voluntary detention without prejudice. See Dkt. 9. On June 16, 2020 the grand jury returned a First Superseding Indictment, adding counts for Obstruction of Justice and Attempted Witness Tampering, see Dkt. 38, based upon the defendant's actions while incarcerated and while he was fully aware his calls were being monitored on a recorded line. See United States v. Bruce Brown, 1:20-mj-02263-MBB-1, Dkt. 2. On July 21, 2020, the grand jury returned a Second Superseding Indictment, which charges Brown with an additional count of Conspiracy to Commit Sex Trafficking, and an additional count of Sex Trafficking by Force, Fraud, and Coercion, based on his trafficking of Victim E from October-December of 2019.

Ultimately, Brown now faces eleven counts as follows: Conspiracy to Commit Sex Trafficking (18 U.S.C. § 1594(c))(Counts One and Two); Sex Trafficking by Force, Fraud and Coercion (18 U.S.C. §§ 1591(a)(1) and (b)(1)) (Counts Three, Five, Six, Seven, and Eight); Sex Trafficking of a Minor and by Force, Fraud and Coercion (18 U.S.C. §§ 1591(a)(1) and (b)(1) and (2)) (Count Four); Transportation of a Minor with Intent to Engage in Criminal Sexual Activity (18 U.S.C. § 2423(a))(Count Nine); Obstruction of Justice (18 U.S.C. § 1503) (Count Ten); and Attempted Witness Tampering (18 U.S.C. § 1512 (b)(1)) (Count Eleven).

---

[2] As of November 9, 2020 (the most recent data available to the government), the defendant's blood oxygen levels were measured at 98 percent. In the week prior, Brown's blood oxygen levels were between 97 and 99 percent. A normal reading is between 95 and 100 percent.

Nine of these crimes carry the potential for life imprisonment. Brown's estimated Guidelines sentencing range is 360-life, which reflects both the severity of the instant charges as well as his extensive criminal history. He also faces the possibility of multiple mandatory minimum sentences. Sex trafficking by force, fraud or coercion, in violation of 18 U.S.C. § 1591(a)(1) and (b)(1), as charged in Counts Three, Five, Six, Seven and Eight of the Second Superseding Indictment carries a mandatory minimum sentence of 15 years. Additionally, sex trafficking of a minor, in violation of 18 U.S.C § 1591, even absent proof of force, fraud or coercion (which is what is charged here), and transportation of a minor carries a mandatory minimum sentence of 10 years. The nature of the penalties the defendant is facing undoubtedly create an incentive for him to flee or evade law enforcement.

On October 13, 2020, the defendant tested positive for COVID-19. Since then, he has been seen by the Health Services Unit at Wyatt. Ex 1. According to his treatment sheets, he is experiencing typical symptoms[3] (including shortness of breath, fatigue and body aches) but notably, he has normal vital signs (including normal oxygen saturation levels). Most significantly, the defendant is <u>not</u> requesting that he should be released to a medical facility, because there is no evidence that his symptoms warrant that. Rather, he proposes release to the same location set forth in his initial motion.

## **Argument**

The Court has already determined that the defendant cannot safely be released into the community pending trial. The Court reached this conclusion based upon its consideration of the Second Superseding Indictment, but also the defendant's "particularly disturbing" jail conversations, after receiving "specific warnings" about obstruction of justice and witness

---

[3] Symptoms are self-reported.

tampering.  The Court also took note of his criminal history, which "spans almost three decades and reflects entries in Massachusetts, Nevada, and Arizona."  Dkt. 71, at 3.

Defendant's renewed motion for release is seemingly premised entirely on his COVID-19 diagnosis.  The defendant does not, because he cannot, allege any changed circumstances that make him less of a danger to the public or potential witnesses.  Nor can he claim that COVID-19 itself, or its generalized risk to detainees, constitutes a changed circumstance, because the Court thoroughly considered and rejected release on COVID grounds in its prior opinion.  Dkt. 71, at 3.  Now the defendant asks the Court to essentially ignore the facts and circumstances of his original detention and release him simply because he contracted COVID-19 over a month ago.  His request should be denied.

If the Court were to accept defendant's logic, any pretrial detainee—regardless of the facts and circumstances underlying his/her detention—could be entitled to immediate release upon simply receiving a COVID-19 diagnosis.  This would undermine the public's interest and safety, and would be inconsistent with statutory framework.  It could also create a perverse incentive for detainees to become deliberately infected in order to facilitate their release.  Indeed, as highlighted in the exhibits to the *Government's Opposition to Defendant's Motion to Reconsider Pretrial Release on Conditions Based on Changed Circumstances and the COVID-19 Pandemic*, Dkt. 60, this defendant may fall into that category.  The defendant previously renounced social distancing calling it "stupid" and "dumb" and noted in jail calls that he was not wearing a mask.  *See* Government's Opposition Exhibit 11, at 12:00 (recorded jail call from April 16, 2020); *Id.*, Exhibit 12, at 4:10 (recorded jail call from April 27, 2020); *Id.*, Exhibit 13, at 3:30 (recorded jail call from April 26, 2020).

The government acknowledges that the pandemic presents a serious national and state public health emergency. However, the factors set forth in 18 U.S.C. § 3142 still must guide the Court in determining, on a case-by-case basis, whether the defendant has proven by clear and convincing evidence there are conditions that can reasonably assure the defendant's appearance and the safety of the community. He has not here.

In this particular case, defendant's motion reports that his circumstances have changed "dramatically", solely because he contracted COVID-19. His motion alleges no specifics whatsoever about his current physical condition, and notes only that he is isolating with other detainees. The motion cites only generalized concerns about increased mortality rates for incarcerated individuals, explicitly quoting articles stating that incarcerated individuals have increased mortality rates because they are more likely to suffer from heart disease or diabetes. Dkt 81, at 4. The defendant has neither condition. *See* Dkt 71, at 3 (noting that the defendant's "minor medical conditions" are well-managed). The defendant's motion also includes quotes about obesity—but this defendant is not obese.

Even if Brown had demonstrably provable health conditions that could lead someone to experience more severe illness as a result of infection, he has now been infected and there is no evidence whatsoever before the court that he has in fact experienced any of those potential consequences. Recent medical records confirm that his vitals and symptoms are normal. There is no allegation that the medical staff at Wyatt is not capable of treating defendant as he recovers.

Courts faced with motions from COVID-positive defendants have denied release because of the obvious risks to both detainees and the public. For example, in *United States v. Minyetty*, the Honorable Judge Casper denied a defendant's motion to review a detention order after the

5

defendant tested positive for COVID-19. No. 20-cr-10004-DJC, Dkt. 86 (D. Mass. June 29, 2020). In ordering the defendant detained, the court held: "There is no basis in this record to indicate that [the defendant] is not receiving appropriate medical care, and there would be a public health concern about his proposed release plan even if the other factors under Section 3142(g) did not weigh against release as this Court finds that they do here. Moreover, any risk of reinfection appears, based upon this record, speculative at best." *Id*. (internal citations omitted). Similarly, in *United States v. West*, No. ELH-19-364, 2020 WL 1820095 (D. Md. Apr. 10, 2020), the district court denied a COVID-19-positive inmate's appeal of his detention order:

> Removing West from isolation and placing him in home confinement may actually facilitate the spread of the virus. If West were released, this would risk transmittal of the virus to the [detention facility] staff involved in his transfer, his third-party custodian, and anyone who visits him while he convalesces…. And, were West to disregard the Court's order of home confinement, he could unwittingly spread the virus to complete strangers. Because of West's present condition, his release might actually pose a distinct and significant risk to the community.

*See also United States v. Cabrera*, No. 10-CR-20016-JES-DGB, 2020 WL 2549941, at *4 (C.D. Ill. May 19, 2020) (denying compassionate release because "the Court believes releasing Defendant Cabrera into the community at this time, while he has COVID-19, would endanger the health and safety of the community.")

These types of risks to third parties are present in any case where a COVID-positive defendant might be released. But here, the risks are heightened because Brown has already demonstrated a disregard for coronavirus safety protocols while detained. Wyatt's efforts to mitigate the spread of COVID-19 within the facility included a robust testing effort—testing not only symptomatic detainees but anyone who might have been exposed. As of the date of filing, Wyatt had administered 4,664 tests. No. 20-mc-00004-JJM, Dkt. 64 (D.R.I. Nov. 13, 2020).

Defendant's motion notes that there are 72 pre-trial detainees who have tested positive. But based upon Wyatt's most recent filing, there are currently only 21 active cases at Wyatt. *Id.*

COVID-19 is undoubtedly serious, and the outbreak at Wyatt is concerning for all. However, given the danger this defendant poses to the community if released—his particularized circumstances dictate that he should remain detained pending trial.

<u>Conclusion</u>

For the reasons stated above, the Court should deny defendant's renewed motion.

    Respectfully submitted,

    ANDREW E. LELLING
    United States Attorney

    By: */s/ Mackenzie A. Queenin*
    Mackenzie A. Queenin
    Assistant United States Attorney
    United States Attorney's Office
    1 Courthouse Way
    Boston, MA 02210

    Dated: November 13, 2020

Certificate of Service

    I, Mackenzie A. Queenin, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing on defendants' attorneys by electronic filing.

                                                  */s/ Mackenzie A. Queenin*
                                                  Mackenzie A. Queenin
                                                  Assistant U.S. Attorney

November 13, 2020